UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
THE BANK OF NEW YORK MELLON      )
        Plaintiff,               )
                                 )
        v.                       )
                                 )     C.A. No. 13-11118-MLW
NOREEN V. LEZDEY,                )
JAMIE HOLDING CO., LLC,          )
WORLD-PHARM TRUST, and           )
the UNITED STATES OF AMERICA,    )
        Defendants.              )
```

MEMORANDUM AND ORDER

WOLF, D.J.                                        September 10, 2014

I.  BACKGROUND

This case was originally brought by plaintiff Bank of New York Mellon ("BNY Mellon") in Barnstable County Land Court against Noreen Lezdey ("Lezdey"), Jamie Holding Company LLC ("Jamie Holding Company"), World-Pharm Trust ("World-Pharm"), and the Internal Revenue Service ("IRS").

The Complaint alleges the following. In October 1991, defendant Noreen Lezdey and her late husband, John Lezdey, acquired title to property in Eastham, Massachusetts. In January 2001, they transferred title to their limited liability company, defendant Jamie Holding Company, for nominal consideration. In early 2004, the Lezdeys sought to take out a mortgage on the property. Because the mortgage application specified that title would be held by Noreen alone, title was transferred back from Jamie Holding Company to Noreen for nominal consideration, and the quitclaim deed was recorded on June 10, 2004. On July 13, 2004, Noreen granted a

mortgage on the property to Mortgage Electronic Registration Systems, Inc., as nominee for Full Spectrum Lending, Inc. However, the Complaint alleges that before the mortgage was recorded on July 26, 2004, Noreen improperly transferred the property back to Jamie Holding Company for nominal consideration, and that Jamie Holding Company recorded this transfer on July 21, 2004. The plaintiff alleges that this transfer created an imperfection in the title. See Compl. ¶¶6-14. The current owner of the property is defendant World-Pharm, of which defendant Lezdey's family members are trustees. See Compl. ¶4. BNY Mellon is the current assignee of the mortgage. See Compl. ¶20.

The plaintiff wishes to foreclose on defendant Lezdey's property, but it claims that due to the imperfection created by Lezdey's transfer of the property between the mortgage's execution and recording, it is necessary to reform the mortgage under Massachusetts law to reflect the parties' intent that BNY Mellon's mortgage be the primary lien on the property, superior to any interest in the property claimed by the defendants. Furthermore, after the mortgage was recorded, the IRS, which is also a defendant named as the United States of America, recorded federal income tax liens due to Noreen Lezdey's failure to pay income taxes. In the Complaint, BNY Mellon seeks a declaratory judgment that its mortgage interest is superior to any interest held by the defendants, see Compl. ¶24, and also seeks to quiet title to the

property, pursuant to Mass. Gen. Laws ch. 240, §6, see Compl. ¶27.

All of the defendants, including the IRS, removed the case to the United States District Court for the District of Massachusetts in May 2013 on the basis of diversity jurisdiction. See Notice of Removal. The case was originally assigned to Judge Joseph L. Tauro, who recused himself on August 1, 2013 because of a potential conflict of interest. See Aug. 1, 2013 Order. The IRS also filed a cross-claim against the other defendants, claiming that federal tax liens should attach to the property. See United States' Answer & Cross-Claim at 8.

On March 24, 2014, the court denied defendants Lezdey, Jamie Holding Company, and World-Pharm's motion for a preliminary injunction against Bank of America, the current servicer of the mortgage. See Mar. 24, 2014 Memo. & Order at 7. Crediting the representations of Bank of America's counsel that the company would make no attempts to interfere with the mortgaged property pending the resolution of this case, the court concluded that these defendants had not demonstrated that any irreparable harm would occur absent a preliminary injunction. See id. at 6.

Defendants Lezdey, Jamie Holding Company, and World-Pharm have also filed motions to dismiss against both BNY Mellon and defendant/cross-claimant IRS. These motions fail to certify that these defendants have conferred with the other parties as required by Rule 7.1(a)(2) of the Local Rules of the United States District

Court for the District of Massachusetts (the "Local Rules"). Moreover, both motions were signed and submitted by Jarett Lezdey, who purports to represent World-Pharm and Jamie Holding Company in his capacity as a trustee and manager for those entities, respectively. See Mot. to Dismiss at 18; Mot. to Dismiss Cross Claim at 11. Because Jarett Lezdey is not an attorney, he is not permitted to represent these defendants, who must retain counsel. See Local Rule 83.5.3(c).

Despite these deficiencies, however, the court is denying these motions to dismiss on the merits.

## II. STANDARD OF REVIEW

Although neither motion to dismiss identifies the Federal Rule of Civil Procedure under which dismissal would be merited, the court infers that the applicable rule is Rule 12(b)(6), which permits dismissal of a claim for "failure to state a claim upon which relief can be granted."

In considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the court must "take all factual allegations as true and . . . draw all reasonable inferences in favor of the plaintiff." Rodriquez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007); see also Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009). The court must "neither weigh[] the evidence nor rule[] on the merits because the issue is not whether the plaintiffs will ultimately

4

prevail, but whether they are entitled to offer evidence to support their claims." Day v. Fallon Cmty. Health Plan, Inc., 917 F. Supp. 72, 75 (D. Mass. 1996). A motion to dismiss should be denied if a plaintiff has shown "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007); see also Rodriquez-Ortiz, 490 F.3d at 95-96 (applying the Bell Atlantic standard to a claim under the Private Securities Litigation Reform Act); Morales-Tanon v. Puerto Rico Elec. Power Auth., 524 F.3d 15, 18 (1st Cir. 2008) (applying the Bell Atlantic standard to a claim under 42 U.S.C. §1983).

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard does not require "detailed factual allegations," but does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl., 550 U.S. at 555. A court may disregard "bald assertions, unsupportable conclusions, and opprobrious epithets." In re Citigroup, Inc., 535 F.3d 45, 52 (1st Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (emphasis added). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between

possibility and plausibility of entitlement to relief."  Id. (quoting Bell Atl., 550 U.S. at 557).

Ordinarily, a court will not consider documents outside of the pleadings in a motion to dismiss.  See Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  From this rule, the First Circuit makes a "narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff's claim; or for documents sufficiently referred to in the complaint."  Watterson, 987 F.2d at 3-4; see also Beddal v. State St. Bank & Trust, Co., 137 F.3d 12, 16-17 (1st Cir. 1998) (when "a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged) that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)").

III. MOTION TO DISMISS

Defendants Lezdey, Jamie Holding Company, and World-Pharm advance six arguments in support of their motion to dismiss the Complaint filed by BNY Mellon.  First, these defendants argue that because the Complaint was signed and verified by Patricia Wirick, a representative of nonparty Bank of America, it is facially deficient.  Second, they argue that an earlier foreclosure attempt by BNY Mellon bars the instant suit.  Third, the defendants argue

6

that because BNY Mellon "did not file this reformation on a timely basis," the defendants have been prejudiced and the doctrine of laches should bar the complaint. Mot. to Dismiss at 3. Fourth, the defendants argue that the fault for any deficiency in the mortgage lies with BNY Mellon's predecessors, not with the defendants. Fifth, they argue that the mortgage is facially deficient because it does not contain payment information and, therefore, is a nullity. Sixth, they argue that BNY Mellon has "unclean hands" because it "planned a Joint Statement meeting and failed to notify Lezdey of the date and time until the last minute." Id. at 11. For the reasons explained below, none of these arguments is meritorious. Therefore, the motion to dismiss is being denied.

    A.   <u>Verification by Patricia Wirick</u>

The defendants first note that the complaint has been verified by Patricia Wirick, an assistant vice president at Bank of America, the current servicer of the mortgage on the property at issue. The defendants state that Wirick "does not claim any first-hand knowledge of any transaction concerning the subject mortgage" and that Bank of America has "no authority to verify the complaint." Mot. to Dismiss at 1. Accordingly, they argue that Wirick's verification "makes the Complaint deficient upon its face and makes the complaint incompetent, irrelevant and immaterial." Id. at 3.

    The defendants offer no authority for this argument. In any

7

event, the First Circuit has recognized that mortgage servicers are often involved in bringing claims on behalf of lenders. See In re Nosek, 609 F.3d 6, 7 n.2 (1st Cir. 2010) ("Suits by servicers acting on behalf of holders are commonplace."). Furthermore, the defendants have not identified any provision of Massachusetts or federal law that requires verification of this complaint.[1] Therefore, any deficiency in the verification is immaterial to the complaint's sufficiency to survive a motion to dismiss.

B. Earlier Attempt at Foreclosure

In passing, the defendants argue that "[t]he Complaint must be dismissed and because this [case] is a precursor to foreclosure and a foreclosure was attempted by Bank of New York, Mellon in 2010 and voluntarily dismissed . . . this Complaint must be dismissed with prejudice." Mot. to Dismiss at 3. However, the defendants do not provide any citations to, or documents from, the earlier foreclosure action, which has not been mentioned in any other filing. Furthermore, the defendants have not offered any legal authority for their argument that voluntary dismissal of the earlier action would bar this case. Contentions that are not developed or supported in a party's submissions are deemed waived. See United States v. Zannino, 895 F.2d1, 17 (1st Cir. 1990). In

---

[1] The plaintiff has explained that the complaint was "verified only for purposes of the Plaintiff's request for a lis pendens under M.G.L. c. 184, Section 15." Pl.'s Opp. to Mot. to Dismiss at 3 n.1.

8

any event, the court finds that any previous dismissal, evidently without prejudice, bars this action.

C. Laches

Next, the defendants argue that because BNY Mellon waited about nine years to file this suit, the defendants have been "severely prejudiced," particularly because of loss of relevant evidence. Id. at 3. The defendants claim that the Barnstable Registry of Deeds keeps dock stamps and filing receipts for a maximum of seven years, see id., and that banks keep records for cancelled checks for a maximum of five years, see id. at 7. Arguing that these documents are both relevant and unavailable, the defendants claim that the doctrine of laches should operate to block BNY Mellon's claims.

Under Massachusetts law, "[l]aches is an unjustified, unreasonable, and prejudicial delay in raising a claim. . . . Laches is not mere delay but delay that works disadvantage to another." Cornell v. Michaud, 947 N.E.2d 1138, 1145 (Mass. App. Ct. 2011) (omission in original) (quoting Colony of Wellfleet, Inc. v. Harris, 883 N.E.2d 1235, 1242 (2008)) (internal quotation marks omitted). Laches is an affirmative defense. See Westhampton Reservoir Recreation Corp. v. Hodder, 29 N.E.2d 913, 914 (Mass. 1940). In order for a federal defendant to successfully deploy such an affirmative defense in a motion to dismiss, "the facts establishing the defense must be clear 'on the face of the

plaintiff's pleadings.'" Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001) (quoting Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 591 (1st Cir. 1989)). "Furthermore, review of the complaint, together with any other documents appropriately considered under Fed. R. Civ. P. 12(b)(6), must 'leave no doubt' that the plaintiff's action is barred by the asserted defense." Id. (quoting LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998)).

Here, the Complaint and appended documents do not demonstrate that laches should bar the plaintiff's claims. Although the motion to dismiss includes the argument that the defendants have been prejudiced because they no longer have access to certain bank records, see Mot. to Dismiss at 5-7, none of this information is in the Complaint or supporting documents. Therefore, the motion to dismiss based on laches is not meritorious. The issue will require factual development and may be addressed, after discovery is complete, on a motion for summary judgment or at trial.

D. Assignment of Fault

The defendants next argue that BNY Mellon should have sought to reform the mortgage when it originally acquired the mortgage note in 2012. Furthermore, the defendants argue that Full Spectrum Lending, the predecessor in interest, was responsible for the late recording of the mortgage, which created the imperfection in the mortgage. See id. at 7-9.

10

Again, these defendants apparently misunderstand the nature of the plaintiff's claim. As BNY Mellon explains:

> The Plaintiff is not seeking to have the Court assign blame for the mistake to Noreen Lezdey or any other Defendant. Who committed the mistake is irrelevant to the issue and the Court's analysis of whether or not the Subject Mortgage, as agreed upon by the parties at the time, should encumber the entire Mortgaged Property. The mistake at issue is the broad mistake of the Subject Mortgage arguably not properly encumbering the entire property, not the narrow one of who actually committed or is responsible for the mistake.

Pl.'s Opp. to Mot. to Dismiss at 12.

Although the plaintiff's opposition focuses largely on the need to reform the mortgage itself, and the defendants cite no Massachusetts law in support of their position, the relevant questions are whether, and under what circumstances, a mortgage binds third-party buyers who acquired the mortgaged property after the mortgage was granted, but before the mortgage was recorded. Under Massachusetts law, "an unrecorded mortgage is invalid as against third parties who do not have 'actual notice' of it." Tramontozzi v. D'Amicis, 183 N.E.2d 295, 297 (Mass. 1962); see also Moore v. Gerrity Co., Inc., 818 N.E.2d 213, 215 (Mass. App. Ct. 2003). "The plaintiff, being the party relying upon an alleged unrecorded mortgage, has the burden of proving that the defendant had actual notice of such a mortgage." Tramontozzi, 183 N.E.2d at 297.

The Complaint does not explicitly allege that Jamie Holding Company had actual notice of the then-unrecorded mortgage when it

reacquired the property on July 21, 2004. However, the other allegations in the Complaint, coupled to the appended documents, are sufficient to assert the existence of actual knowledge by agents of Jamie Holding Company. The Complaint alleges that Noreen Lezdey, in whose name the mortgage was issued and who signed the July 21, 2004 quitclaim deed, was also "a manager of Jamie Holding and its registered agent." Compl. ¶3. Furthermore, John Lezdey, who signed the first quitclaim deed and who was identified in that deed as a Vice President of Jamie Holding Company, see Compl. Ex. D, also signed the mortgage document, see Compl. Ex. E, and witnessed the July 21, 2004 quitclaim deed, see Compl. Ex. F. The Complaint, referring to both John and Noreen Lezdey, describes Jamie Holding Company as "_their_ limited liability company." Compl. ¶7 (emphasis added). The Complaint, therefore, contains allegations sufficient to support a finding of "actual notice" by Jamie Holding Company of the existence of the then-unrecorded mortgage on the property.

Because the applicable Massachusetts law focuses on "actual notice," rather than comparative fault, and because the Complaint adequately alleges actual notice, this basis for the motion to dismiss is not meritorious.

E.  Absence of Payment Information

The defendants next argue that the "[s]ubject mortgage is deficient upon its face for it does not contain all the essential

12

elements of a contract, [and is] therefore a nullity." Mot. to Dismiss at 9. In particular, they claim that the periodic payment amount and interest rate were not included in the mortgage itself, and that these repayment provisions are, therefore, a "mystery." Id.

The defendants have identified no provision of Massachusetts law that requires the mortgage, as opposed to the promissory note, to contain specific information on repayment of the loan that the mortgage is intended to secure. Under Massachusetts law, "[i]n a mortgage, the note is the primary document, and the mortgage itself is only security for the payment of the note." Santiago v. Alba Mgmt., Inc., 928 N.E.2d 359 (Mass. App. Ct. 2010) (quoting Eno & Hovey, Real Estate Law §9.3 (4th ed. 2004)) (internal quotation marks omitted). "It is well established that a mortgage and note are to be read together. Thus, a note coupled with its security, i.e., the mortgage, constitute one contract for breach of contract purposes." Kattar v. Demoulas, 739 N.E.2d 246, 255 n.7 (Mass. 2000) (citation omitted) (citing Mayo v. Fitchburg & Leominster St. Ry., 168 N.E. 405 (1929)). Accordingly, "[t]he mortgage does not have to fully describe the consideration, but rather must only describe the debt in sufficient detail to put a person examining the title on notice of its extent." Joseph v. Heirs of McDonald, No. 299191, 2006 WL 2129775, at *2 (Mass. Land Ct. July 27, 2006) (citing Hampshire Nat'l Bank of So. Hadley v. Calkins, 339 N.E.2d

13

244 (Mass. App. Ct. 1975)); see also Restatement (Third) of Property: Mortgages §1.5(a) (1997) ("A mortgage need not describe the obligation whose performance it secures, provided the parties have otherwise reached agreement identifying that obligation.").

Here, the mortgage specified both the amount and duration of the loan and clarified that the details of the loan agreement were embodied in the accompanying Note. See Compl. Ex. E. The mortgage, therefore, "describe[d] the debt in sufficient detail" to alert parties to its existence. Accordingly, the lack of detailed repayment information in the mortgage itself does not render the mortgage deficient or unenforceable under Massachusetts law.

F. Unclean Hands

Finally, these defendants argue that the plaintiff "is pursuing their Complaint with 'unclean hands.'" Mot. to Dismiss at 11. They claim that counsel for BNY Mellon deliberately delayed communications with Noreen and Jarett Lezdey in order to prevent them from contributing to the Joint Statement. Moreover, they argue that "[i]t is beyond belief that the Internal Revenue Service did not know and did not help to orchestrate these foul, scandalous, prejudice [sic] and frivolous actions, for at any conference the Internal Revenue Service would have known that Lezdey were [sic] not participating." Id. For these reasons, these defendants request both dismissal and sanctions.

However, these defendants have submitted emails from John

14

Allen, Esq., counsel for BNY Mellon, which show that Allen emailed Jarett Lezdey on both July 17, 2013 and July 22, 2013, seeking to confer with both Jarett and Noreen Lezdey to prepare the Joint Statement and otherwise comply with the court's July 3, 2013 scheduling order. See Mot. to Dismiss Exs. AA, BB. Allen then sent Jarett Lezdey a draft Joint Statement on July 26, 2013 that reflected their discussions earlier that day, and asked Jarett and Noreen Lezdey to add their respective sections so that the statement could be submitted by the deadline on Monday, July 29, 2013.[2] See Mot. to Dismiss Ex. BB. Rather than demonstrating misconduct by counsel for BNY Mellon as these defendants claim, these emails indicate that counsel was attempting to engage these defendants in timely preparing the Joint Statement. Neither sanctions nor dismissal are warranted.

Because this argument and all of the defendants' other arguments in favor of dismissal are not meritorious, the motion to dismiss is being denied.

IV. MOTION TO DISMISS CROSS-CLAIM

Defendants Lezdey, Jamie Holding Company, and World-Pharm have also filed a motion to dismiss the IRS's cross-claim complaint.

---

[2] Pursuant to the July 3, 2013 scheduling order, the Joint Statement was due five business days before the August 6, 2013 scheduling conference. See July 3, 2013 Notice of Scheduling Conference. Therefore, the appropriate due date was July 29, 2013, not July 26, as these defendants claim.

These defendants make three arguments in support of their motion. First, they argue that the cross-claim complaint is identical to one dismissed by Judge Rya W. Zobel in <u>United States v. Lezdey et al.</u>, C.A. No. 12-11486-RWZ and, therefore, it must be dismissed in this case as well.  Second, they argue that the cross-claim complaint includes no documentation to substantiate the IRS's allegations, also in alleged violation of Judge Zobel's order. Finally, the defendants argue that because the IRS has disobeyed Judge Zobel's order of dismissal, it is "moving in bad faith and with unclean hands by knowingly and recklessly pursuing a frivolous claim," which should result in dismissal and the imposition of sanctions.  <u>See</u> Mot. to Dismiss Cross-Claim Compl. at 5.

Because the defendants have misconstrued Judge Zobel's dismissal of the IRS's earlier action, and because they have shown no misconduct by the IRS, the motion to dismiss the cross-claim complaint and the request for sanctions are being denied.

    A.    <u>Dismissal by Judge Zobel</u>

The defendants first argue that the cross-claim complaint should be dismissed because it is identical to the original complaint filed by the IRS in <u>United States v. Lezdey et al.</u>, C.A. No. 12-11486-RWZ.  They argue that the original complaint in that case was "deficient on its face," implying that because the IRS attempted to file a First Amended Complaint in that case, the original complaint was necessarily flawed.  Therefore, they argue

16

that this case "must be dismissed with prejudice" because "this case is the second time the Internal Revenue Service is going after Lezdey for the same result and a dismissal was obtained in the first case." Mot. to Dismiss Cross-Claim Compl. at 3.

The defendants misconstrue the earlier dismissal. In that case, Judge Zobel did not dismiss the IRS's complaint because of any deficiency in the complaint. Instead, Judge Zobel determined that the IRS had failed to serve the defendants within 120 days, as required by Federal Rule of Civil Procedure 4(m), and that it had not demonstrated good cause for an extension of time for service. See Memo. of Decision at 11-12, United States v. Lezdey et al., C.A. No. 12-11486-RWZ (D. Mass. Feb. 26, 2013), ECF No. 17. Therefore, Judge Zobel dismissed the complaint "without prejudice as to all defendants," id. at 12, and explicitly stated that the IRS "can file a new complaint without consequence to its claims," id. at 11.

Furthermore, the defendants are incorrect that the IRS's cross-claim complaint is identical to the first complaint filed in the earlier case. Rather, the cross-claim complaint is largely identical to the First Amended Complaint in the earlier case, which clarified the role of defendant World-Pharm Trust. Even if the cross-claim complaint were identical to the original complaint in the earlier case, it does not follow that the existence of an amended complaint means the original complaint was "deficient upon

17

its face."  Mot. to Dismiss Cross-Claim Compl. at 3.

Therefore, the defendant's first argument in support of their motion to dismiss the cross-claim complaint is not meritorious.

B.   Lack of Documentation

Next, the defendants argue that the IRS has failed to supply supporting documentation for its cross-claim complaint.  They argue that Judge Zobel, in her dismissal of the earlier action, admonished the IRS for failing to include such documentation, and that the failure to include such documentation here is further grounds for dismissal.

Once again, the defendants misconstrue Judge Zobel's order of dismissal.  In that order, Judge Zobel explained that it would be inappropriate to grant an extension of time for the IRS to serve the defendants because the IRS had not demonstrated good cause for its failure to serve within 120 days.  The IRS had claimed that the defendants in that case had evaded service, but Judge Zobel noted that this claim was "unsupported by any affidavit or exhibits." Memo. of Decision at 8.  However, contrary to the defendant's assertions, Judge Zobel did not find a lack of documentation supporting the IRS's complaint itself.

As the IRS correctly argues in its opposition to the motion to dismiss, the Federal Rules of Civil Procedure do not require the inclusion of supporting documentation in support of a cross-claim, and the defendants have not identified any other law or case that

would require the inclusion of such documentation here. The defendants have not otherwise attacked the sufficiency of the pleadings in the cross-claim complaint. Therefore, this argument by the defendants is also not meritorious, and the motion to dismiss the cross-claim complaint is being denied.

    C.   <u>Allegations of Bad Faith</u>

Finally, the defendants argue that because the IRS has "resubmitted a complaint lacking evidence and whose conduct was already 'red flagged' as flawed by the Honorable Judge Zobel," it is wasting the court's time and has caused "irreparable harm" to the Lezdey family. Accordingly, the defendants also request the imposition of sanctions on the IRS under 28 U.S.C. §1927.

As explained earlier, the defendants have not demonstrated that the IRS has acted in defiance of Judge Zobel's earlier order or has otherwise failed to comply with the Federal Rules of Civil Procedure. Therefore, the imposition of sanctions is not justified.

V.  ORDER

In view of the foregoing, it is hereby ORDERED that:

    1.  The Alleged Defendant(s)/Respondent(s) Motion to Dismiss (Docket No. 40) is DENIED.

    2.  The Alleged Defendant(s)/Respondent(s) Petition/Motion to Dismiss United States of America Cross Claim (Docket No. 39) is DENIED.

3. Defendants Jamie Holding Company LLC and World-Pharm Trust shall, by October 10, 2014, cause counsel to appear on their behalf.

4. A Scheduling Conference shall be held on October 29, 2014. The parties shall comply with the attached Order concerning that conference.

                                                /s/ Mark L. Wolf
                                        UNITED STATES DISTRICT JUDGE